**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RENA C., Individually and on Behalf of A.D.** | : | **CIVIL ACTION** |
| | : | |
| | : | |
| **v.** | : | |
| | : | |
| **COLONIAL SCHOOL DISTRICT** | : | **No. 15-1914** |

<u>**MEMORANDUM OPINION**</u>

**Savage, J.**                                                        **December 20, 2016**

In this action brought under 20 U.S.C. § 1415 of the Individuals with Disabilities Education Act ("IDEA") for the sole purpose of obtaining attorney's fees, we see how the attorney's fees and the ten-day offer provisions work together to benefit the disabled child, not the attorneys or the school district. The attorney's fees provision is intended to encourage attorneys to represent children with disabilities. It is not meant to reward them for needlessly prolonging proceedings. The ten-day offer provision aims to motivate the parties to resolve the dispute early for the disabled student's benefit. It incentivizes the school district to offer the most appropriate education program sooner than later. At the same time, it works as a check, dissuading attorneys from protracting the proceedings in order to increase fees.

Within this context, our task is to determine whether Colonial School District made a valid written offer of settlement pursuant to 20 U.S.C. § 1415. If so, we must decide whether plaintiff Rena C. obtained more favorable relief than was offered and whether she was substantially justified in rejecting the offer.

We conclude that the offer was valid and Rena did not obtain a more favorable result in the administrative proceedings than what Colonial had offered. Nor was she

substantially justified in rejecting the offer.  Therefore, we shall award her attorney's fees only for work performed before the offer expired.

## Background

From second through sixth grades, Rena's child, A.D., attended public school in the Colonial School District.  Concerned with A.D.'s progress at Colonial, Rena unilaterally enrolled her at Stratford Friends School in the seventh grade for the 2012–13 school year.  Claiming that Colonial had failed to provide a free appropriate public education as required by the IDEA, Rena sought tuition reimbursement from Colonial.

After Colonial refused, Rena filed for due process review.  On April 2, 2013, an administrative hearing officer found Rena's unilateral placement appropriate and Colonial's Individualized Education Program ("IEP") inadequate.[1]  She awarded Rena two years of compensatory education, tuition reimbursement for the 2012–13 school year, and ongoing tuition reimbursement until Colonial convened an appropriate IEP meeting.[2]

Rena re-enrolled A.D. at Stratford Friends in the eighth grade for the 2013–14 school year, using compensatory education funds to pay the tuition.  At the end of the school year, Colonial convened an IEP meeting.  Rena disputed the adequacy of this IEP.  On June 27, 2014, she requested mediation from the Pennsylvania Department of Education's Office of Dispute Resolution.

On August 13, 2014, Rena notified Colonial of her intent to enroll A.D. at Delaware Valley Friends School ("DVFS") for the 2014–15 school year.  She requested reimbursement for tuition and related expenses.[3]  She did not advise Colonial that A.D. would be repeating eighth grade.  On August 21, 2014, Colonial responded that it

believed its new IEP was adequate and Rena could raise her concerns at the mediation.[4]

On the advice of counsel, Rena cancelled the mediation scheduled for August 28, 2014.[5]   Six days later, she filed an administrative complaint seeking declaratory relief and reimbursement for private school tuition and associated costs for the 2013–14 and 2014–15 school years.[6]

On September 18, 2014, Colonial sent Rena a ten-day offer letter pursuant to 20 U.S.C. § 1415(i)(3)(D)(i)(I)–(III).   No longer insisting on adhering to the IEP, Colonial offered "to pay private school tuition and transportation for Parent's unilateral placement at Delaware Valley Friends School."[7]   Rena did not respond to the written offer within ten days.  Not until October 28, 2014, did she, through her attorney, formally dispute the validity of the ten-day letter, claiming it did not have school board approval and did not constitute an offer of judgment.[8]   She also complained it did not address pendency and attorney's fees.[9]

In the meantime, on October 8, 2014, not having received a response to the ten-day letter, Colonial sent a draft settlement agreement offering to pay four years of "base tuition" and transportation at DVFS.   In response, Rena requested a fifth year at DVFS.[10]   She had neglected or intentionally failed to inform Colonial that A.D. was repeating eighth grade.  On October 29, 2014, two days before the scheduled due process hearing, Colonial rejected Rena's request for a fifth year at DVFS, characterizing A.D.'s repeating eighth grade as a "game-changer."[11]

To continue the negotiations, Rena, with Colonial's consent, requested a sixty-day conditional dismissal of the due process hearing.[12]   On December 4, 2014, Colonial

took the four-year deal off the table.  One week later, it rejected Rena's request for pendency at DVFS.[13]  After negotiations failed, Rena reinstated the due process action on December 28, 2014.[14]

The hearing commenced on January 30, 2015.[15]  A second session, scheduled for February 17, 2015, was cancelled by the hearing officer.[16]  Finally, after several days mediating with the hearing officer,[17] the parties stipulated to a consent order on March 10, 2015.  The order provided tuition, one-on-one instructional support and transportation reimbursement for A.D.'s placement at DVFS,[18] and pendency at DVFS.[19]  There was no provision for attorney's fees.

Fifteen days after the parties entered into the consent agreement, Rena's counsel demanded "a substantial five figure offer" to cover attorney's fees through the administrative proceedings.[20]  Colonial responded on April 6, 2015, offering to pay attorney's fees incurred up until the September 18, 2014 ten-day offer.[21]  One week later, Rena filed her complaint seeking attorney's fees.

### Attorney's Fees Under the IDEA

The prevailing party in an IDEA proceeding may be awarded reasonable attorney's fees.  20 U.S.C. § 1415(i)(3)(B)(i).  A parent who obtains judicially sanctioned relief on the merits may recover attorney's fees.  *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001); *John T. ex rel. Paul T. v. Delaware Cty. Intermediate Unit,* 318 F.3d 545, 557–58 (3d Cir. 2003).  On the other hand, a prevailing school district may be awarded attorney's fees where the parent's complaint was "frivolous, unreasonable, or without foundation," or she continued to litigate the matter after it had become clear that the litigation was "frivolous,

unreasonable, or without foundation." 20 U.S.C. § 1415(i)(3)(B)(i)(II); *e.g.*, *Capital City Pub. Charter Sch. v. Gambale*, 27 F. Supp. 3d 121 (D.D.C. 2014). A prevailing school district may also be awarded attorney's fees where the parent's complaint was "presented for any improper purpose, such as to harass, to cause unnecessary delay, or to needlessly increase the cost of litigation." 20 U.S.C. § 1415(i)(3)(B)(i)(III); *e.g.*, *Alief Indep. Sch. Dist. v. C.C. ex rel. Kenneth C.*, 655 F.3d 412 (5th Cir. 2011).

A school district may limit its exposure to attorney's fees by making an early written offer. A parent may not recover for an attorney's work done after she had rejected a written settlement offer that was more favorable than what she finally obtained. 20 U.S.C. § 1415(i)(3)(D). Nevertheless, even if the final result is less favorable than the offer, a parent may still be awarded attorney's fees where she was a prevailing party and was "substantially justified" in rejecting the settlement offer. *Id.* § 1415(i)(3)(E).

The ten-day offer provision provides:

> Attorneys' fees may not be awarded and related costs may not be reimbursed in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if—
>
> (I) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins;
>
> (II) the offer is not accepted within 10 days; and
>
> (III) the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement.

*Id.* § 1415(i)(3)(D)(i).

Rena contends there was no valid ten-day offer; and, if there was, the relief she ultimately obtained was more favorable than the offer and she was substantially justified in rejecting the offer.  Colonial maintains that its September 18, 2014, letter was a valid ten-day offer and Rena did not receive more favorable relief than what it had offered.

Colonial does not dispute that Rena is entitled to reasonable attorney's fees up to September 28, 2014, ten days after Colonial made its settlement offer.  It contends she is not entitled to attorney's fees for work performed after the ten-day offer had expired because she did not obtain a result that was better than what had been offered.

### The Ten-Day Offer Letter Was Valid

Rena argues that the offer was invalid for two reasons.  First, she contends it was not an offer of judgment.  Second, it had not been approved by the school board.  Neither of these arguments has merit.

Rena's contention that Colonial's ten-day offer letter was invalid because it was not an "offer of judgment" is baseless.  Nothing in 20 U.S.C. § 1415(i)(3)(D)(i) requires a school district to make a formal offer of judgment to invoke the provision's protection against accruing attorney's fees.  The statutory reference to Rule 68 is to the time requirement, not to the form.  A written offer containing the essential terms of the proffered plan is sufficient.

Rena's argument that an offer must be preapproved by the school board is likewise without foundation.  Section 1415(i)(3)(D)(i) does not require that a written settlement offer be pre-approved by the school board.

Agreements in IDEA cases are typically reached subject to board approval.  The school board cannot act on a settlement unless its terms are known.  Until the parent

advises the school district that the offer is acceptable, there is nothing for the board to consider.  Once the parent advises that the offer is acceptable, the board votes to approve or disapprove the terms.  If the board disapproves, then the parties continue to negotiate or litigate, in which case the attorney's clock continues to tick.  On the other hand, if the parent rejects the offer, negotiations continue until the parties reach a proposed agreement for submission to the board.

Colonial's ten-day offer was valid.  Rena did not accept it within ten days. Therefore, unless she obtained more favorable relief than Colonial had offered or she was substantially justified in rejecting the offer, Rena is not entitled to an award of fees for work done after the offer expired.

## Rena Did Not Obtain More Favorable Relief

Rena argues that she obtained significant benefits that Colonial had not offered—one-on-one instruction and pendency at DVFS.  Colonial contends Rena did not obtain more favorable relief because its offer included both one-on-one instructional support and pendent placement at DVFS.[22]

The question of one-on-one instruction never arose.  At no time during the negotiations was the topic discussed.  If she had any doubt, Rena could have requested clarification.  She did not.

In her administrative complaint, Rena sought "private tuition and associated costs."[23]  She did not specifically request one-on-one instruction.  There was no need because DVFS's tuition bill for the 2014–15 school year included one-on-one instruction.[24]  Colonial offered to pay that bill.  Thus, one-on-one instruction was necessarily included in Colonial's offer.

The question of pendency is more complicated.  Because the consent order specifically fixed pendency at DVFS, whether the offer included pendency is critical.  If it did not, Rena obtained more favorable relief.

The ten-day offer letter does not explicitly mention pendency.  Colonial contends it was included.  Rena claims it was not.  In determining whether Colonial offered pendency at DVFS, we must review the facts in the context of the "stay-put" provision of the IDEA.

When a parent challenges a proposed IEP or change in educational placement, the child may remain in the "then-current educational placement" until the IDEA proceedings conclude.  20 U.S.C. § 1415(j).  This "stay-put" provision prevents school authorities from unilaterally changing an existing educational placement, commonly referred to as the pendent placement.  *Michael C. ex rel. Stephen C. v. Radnor Twp. Sch. Dist.*, 202 F.3d 642, 650 (3d Cir. 2000).  The child may not be moved to another school unless the parties agree or the administrative agency orders transfer.  In the meantime, the school district must continue funding the child's pendent placement until final resolution of all IDEA proceedings, including appeals.  *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 125 (3d Cir. 2014), *cert. denied*, 135 S. Ct. 2309 (2015).

On the other hand, when a parent unilaterally changes the educational placement, the school district need not pay for the new placement.  *Michael C.*, 202 F.3d at 651.  If a parent's unilateral placement is later deemed appropriate and the district's placement not, the school district must reimburse the parent.  *Sch. Comm. v. Dep't of Educ.*, 471 U.S. 359, 370 (1985).  If it is determined that both placements are appropriate or the parent's is not, the school district is not responsible for funding the

parent's placement.  Thus, parents who unilaterally place their child in private school do so "at their own financial risk."  *Id.* at 373–74; *see M.R.*, 744 F.3d at 118.

Where the child is attending a school that is not designated in the IEP, either because the parent unilaterally moved or the parties agreed to move the child to another school, questions regarding placement may arise.  In the absence of an agreement or order to pay tuition at another school, the pendent placement is at the school designated in the IEP.  But, where the school district is paying tuition at another school, the pendent placement is the school where the child is attending even though it is not the school named in the IEP.

The Third Circuit has instructed that the "dispositive factor in deciding a child's 'current educational placement' should be" the school designated in the IEP "actually functioning when the 'stay put' is invoked."  *Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 867 (3d Cir. 1996) (citing *Woods v. N.J. Dep't of Educ.*, No. 93–5123, 20 Indiv. Disabilities Educ. L. Rep. (LRP Publ'ns) 439, 440 (3d Cir. Sept. 17, 1993)).  However, the *Drinker* court did not suggest that the pendent placement is always the school designated in the last IEP.  It stated that it "should be," not that it must be.  *Id.* Significantly, the IEP must be "actually functioning when the 'stay put' provision is invoked."  *Id.*  The *Drinker* court did not refer to the standing IEP, but rather the IEP "actually functioning."  If, by agreement, the child is not attending the designated school, the IEP is not "actually functioning."  Therefore, when the student is enrolled in a school that is not specified in the IEP and the school district has agreed to pay tuition there, the pendent placement is not the school designated in the IEP because the IEP is no longer "actually functioning."

The rationale for the "stay-put" provision is to avoid disrupting the child's educational program.  It aims to preserve the status quo.  Absent the parties' agreement or an administrative agency order, a school district may not unilaterally change the student's placement regardless of where placement is fixed in the IEP.  Once the school district agrees to pay tuition at a school other than the one designated in the last IEP and does not reserve or limit placement to the school designated in the IEP, enrollment at the private school becomes the "then-current educational placement" for purposes of the stay-put rule.  *See M.R.*, 744 F.3d at 119.

Colonial claims it agreed to pendency at DVFS when it offered to pay A.D.'s tuition there.  It contends that it was "bound" to placement at DVFS "by operation of law."[25]   Rena disagrees.  She argues that by characterizing DVFS as a "Parent's unilateral placement," Colonial meant that it did not agree that DVFS was the pendent placement.  However, Rena's counsel, David Berney, acknowledged in an October 28, 2014 email to Colonial that he only assumed the district would have insisted upon pendency at Colonial School District.[26]

The question is whether Colonial, without using the words "pendent placement," offered pendency at DVFS when it offered to pay tuition and transportation there.  To answer this question, we must ask another.  Is pendency established at the private school unless the school district's agreement to pay tuition there is expressly limited? We conclude that it is.

A school district's offer to pay private school tuition includes pendency at that school unless the district explicitly conditions its offer to the contrary.  *See K.L. v. Berlin Borough Bd. of Educ.*, No. 13-4215, 2013 WL 4039023, at *6 (D.N.J. Aug. 7, 2013);

*Lauren W. v. Bd. of Educ.*, No. 02-4775, 2002 WL 32130764, at *4 (E.D. Pa. Sept. 12, 2002). In other words, by agreeing to pay, without limitation, a student's tuition at a school of the parent's choice, a school district agrees to placement there.

A school district establishes pendency when it assumes financial responsibility for the private school placement and does not put the parents on notice there will or may be a placement change in the future. In *Jacobsen v. D.C. Bd. of Educ.*, 564 F. Supp. 166, 171 (D.D.C. 1983), pendency was implied because the school district "failed to limit its financial responsibility" and failed to "put the parents on notice" of a future placement change. In *Doe v. Indep. Sch. Dist. No. 9*, 938 F. Supp. 758, 761 (N.D. Okla. 1996), a school district's agreement limiting private school payment to two years established pendency because no future change in placement was mentioned in the agreement. In *Gabel v. Hyde Park Bd. of Educ.*, 368 F. Supp. 2d 313, 325 (S.D.N.Y. 2005), pendency was implied even though the school district limited tuition reimbursement to one year because the agreement did not specifically contemplate public school placement. Likewise, in *Evans v. Bd. of Educ.,* 921 F. Supp. 1184, 1188 (S.D.N.Y. 1996), pendency was established where the school district did not otherwise condition its oral agreement to fund private school tuition during a placement dispute.

To avoid establishing pendency in private school, the school district must limit tuition payments to the current school year and explicitly reserve possible public school placement for subsequent years. *See Zvi D. v. Ambach*, 694 F.2d 904, 907 (2d Cir. 1982). In *Zvi D.*, the settlement agreement provided funding "with the stipulation that a review of Zvi's classification will be conducted at the end of the current year with a view toward placing him in an appropriate public program in September 1979." *Id.* In that

case, the parents were clearly on notice that the private school was only a temporary placement.   Similarly, the Ninth Circuit held that a school district did not establish pendency in the private school when the settlement agreement limited tuition payment to one year, made no mention of "placement," and referenced possible transition to public school the following year.   *K.D. ex rel. C.L. v. Dep't of Educ.*, 665 F.3d 1110, 1119 (9th Cir. 2011).

Here, Colonial's ten-day offer necessarily included pendency at DVFS.   It did not limit the tuition payment at DVFS to any time period and did not reference future transition to public school.   It did not provide for reviewing the placement in the future.   Nor did it reserve placement in the Colonial School District.   Thus, Colonial offered pendency at DVFS.

On March 3, 2015, after Rena had rejected another settlement offer, Colonial reiterated that the ten-day offer letter had included pendency at DVFS.   Colonial's attorney wrote, "The plain language [of the ten-day offer] is nothing more than 'agreement' to place A.D. at DVFS, and following any such agreement, pendency would unquestionably apply."[27]   At the same time, Colonial renewed the offer made in its earlier ten-day letter, writing "if Parent now sees the wiser in wanting the offer, kindly let me know so that we can conclude this matter."[28]

In arguing that the September 18, 2014 letter did not offer pendency, Rena relies on Colonial's October 8, 2014 draft settlement agreement, which she claims "explicitly stated that pendency would not be at the private school."[29]   Contrary to her argument, the draft settlement agreement is not relevant to the meaning of the ten-day offer.   It was presented after the ten-day offer had expired.   It was a new proposal.

There is no requirement that a school district make a better offer or reinstate the ten-day offer after it expired or was rejected. A school district is free to offer more or less than what it had originally offered. When it does, the later offer does not prove what the original one was.

Even if it was relevant, the later settlement offer does not support Rena's contention that Colonial had not offered pendency at DVFS. The proposal did not, as Rena claims, state that pendency would not be at DVFS or another private school. On the contrary, the draft agreement offered placement at DVFS or another private school of her choosing.

The draft, titled "Release and *Placement Agreement* in Lieu of FAPE,"[30] specifically provided that "*[s]tudent's placement at DVFS* will be according to this Agreement and *not through an IEP and NOREP*."[31] It made clear that "this Agreement is sufficient prior written notice that Student will graduate from DVFS."[32] Colonial offered to pay tuition, expenses and transportation as "long as Student is enrolled at DVFS and remains a resident of the District."[33]

Only if A.D. was not permitted to attend DVFS or was not permitted to graduate at the conclusion of the 2017–18 school year, *and* parents requested an offer of FAPE, would the pendent placement be the IEP developed at the parents' request.[34] The proposal also allowed Rena to request an IEP at any time subsequent to enrollment at DVFS.[35]

Significantly, the draft agreement had a portability provision which essentially offered pendency at DVFS or a private school of Rena's choice. Colonial was prepared to allow A.D. to transfer from DVFS to another private school during her four high school

years.[36]  If she was unable to enroll in DVFS or another private school, Rena could request Colonial to develop an IEP within thirty days.[37]  Then, only if Rena disagreed with the IEP, A.D.'s pendent placement would be the school designated in the proposed IEP.[38]  Colonial sought to ensure that pendency would return to a school of the district's choosing only if A.D. could not attend DVFS or another private school.  In short, under Colonial's October 8, 2014 proposal, A.D. could stay at DVFS or another private school through the 2017–18 school year.  Thus, just as it had in its ten-day offer, Colonial was again offering placement at DVFS for the expected duration of A.D.'s high school career.

In summary, we conclude that Colonial did offer pendency and one-on-one instruction in the ten-day offer letter.  Therefore, Rena did not obtain a more favorable result than Colonial's offer.

### Rena Was Not Substantially Justified in Rejecting the Offer

A parent who does not obtain a more favorable result in the administrative proceedings may still be entitled to attorney's fees if she was substantially justified in rejecting the offer.  Rena contends she justifiably rejected Colonial's offer because it did not include pendency at DVFS and attorney's fees.

Rena was not justified in ignoring and rejecting Colonial's offer which included pendency at DVFS.  When her counsel did belatedly respond to the ten-day offer, he did so on frivolous grounds, failed to seek clarification of the offer and insisted on pressing frivolous arguments throughout the proceedings.  Therefore, Rena was not substantially justified in rejecting Colonial's offer.

Colonial's position did change.  After it learned that Rena had failed to disclose

14

that A.D. was repeating eighth grade, it withdrew its offer to pay tuition at DVFS until A.D. graduated.[39]  One week later, on December 11, 2014, counsel for Colonial wrote to Berney, "The school district has considered parents' request for an agreement that shifts pendency to the private school.  It does not agree."[40]

This change in position occurred after Rena had rejected Colonial's initial offer, which had included pendency at DVFS.  It was this rejection which resulted in prolonging the process.  Ultimately, Rena obtained what Colonial had initially offered her.  In other words, had Rena accepted Colonial's earlier offer, there would have been no need to proceed with the administrative process other than to have the agreement reduced to a consent order.

Rena also argues she was substantially justified in rejecting the ten-day offer because Colonial failed to agree to pay reasonable attorney's fees.[41]  Colonial contends that although the ten-day letter did not mention attorney's fees,[42] either the parties could have agreed on reasonable fees or Rena could have sued for them as a prevailing party.[43]

A settlement agreement confers "prevailing party" status only when the agreement changes the legal relationship of the parties and is judicially-sanctioned. *Buckhannon*, 532 U.S. at 605; *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 853 (3d Cir. 2006).  To be "judicially sanctioned," a settlement agreement must be embodied in an order signed by a judge, *John T.*, 318 F.3d at 558 (citing *Truesdell v. Phila. Hous. Auth.,* 290 F.3d 159, 165 (3d Cir. 2002), or an administrative hearing officer**,** *P.N.*, 442 F.3d at 854–55 (citing *A.R. ex rel. R.V. v. N.Y.C. Dep't of Educ.*, 407 F.3d 65, 76 (2d Cir. 2005).  In other words, the agreement must bear a judicial imprimatur.  *Id.* at 854.

Had Rena accepted Colonial's offer without having it incorporated in a consent order, Colonial could have argued that she did not qualify as a prevailing party because the settlement lacked judicial or administrative approval.  However, Colonial explained it was making the offer to "further limit" exposure to attorney's fees, implicitly acknowledging it would pay attorney's fees incurred to date.[44]  Later, on October 8, 2014, Colonial explicitly stated that it would pay reasonable attorney's fees.[45]

The Fifth Circuit held that a parent was not substantially justified in rejecting a settlement offer because it did not provide for attorney's fees.  *Gary G. v. El Paso Indep. Sch. Dist.*, 632 F.3d 201, 210 (5th Cir. 2011).  The parent, instead of accepting the ten-day offer and paying a small amount of legal fees accrued to that point, continued the dispute for several years without obtaining more favorable relief.  *Id.*  The Fifth Circuit explained: "[W]e do *not* hold that every plaintiff rejecting a settlement offer because it does not include [attorney's] fees is, *per se*, not substantially justified in rejecting it.  On this record, however . . . [parent] Gary G. was not 'substantially justified' in rejecting the offer in order to obtain the fees."  *Id.*

Despite the invitation to discuss the offer, Rena did not raise her concerns regarding attorney's fees until later.  She could have easily requested that the terms of the offer be reduced to a consent decree which would have conferred prevailing party status on her for purposes of seeking attorney's fees.[46]  Therefore, because there was no real dispute about attorney's fees at the time the offer was made, Rena was not justified in ignoring and rejecting Colonial's offer.

In summary, we conclude that Rena did not ultimately obtain more favorable relief than Colonial had offered.  Nor was she justified in persisting in her frivolous

arguments.   Instead, she and her counsel unnecessarily protracted the litigation. Therefore, we shall award her attorney's fees only for work performed to September 28, 2014, the date the ten-day offer expired.

### The Requested Attorney's Fees Are Unreasonable

Determining the amount of a reasonable fee requires a two-part analysis. *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983); *Maldonado v. Houstoun,* 256 F.3d 181, 184 (3d Cir. 2001).   First, we assess whether the time spent was reasonable. *Maldonado,* 256 F.3d at 184.   Second, we decide whether the attorney's hourly rate is reasonable.   *Id.*   Once these two numbers are established, they are multiplied to yield the lodestar, which is presumed to be a reasonable fee.   *Rode v. Dellarciprete,* 892 F.2d 1177, 1183 (3d Cir. 1990).   After the lodestar is established, the burden shifts to the adverse party to demonstrate that the fee is unreasonable.   *Id.*

A request cannot be reduced based on factors not raised by the adverse party. *Id.* (quoting *Bell v. United Princeton Props.*, 884 F.2d 713, 720 (3d Cir. 1989)). Objections must be specific.   *See United States v. Eleven Vehicles, Their Equipment & Accessories,* 200 F.3d 203, 211–12 (3d Cir. 2000).   Nevertheless, once the adverse party specifically objects to a fee request, we have considerable discretion to "adjust the fee award in light of those objections."   *Rode*, 892 F.2d at 1183 (citations omitted).

### *Hourly Rate*

In determining a reasonable hourly rate, we compare the attorney's rates to the market rates in the community for similar services by lawyers of "reasonably comparable skill, experience, and reputation." *Loughner v. Univ. of Pittsburgh*, 260 F.3d 173, 180 (3d Cir. 2001) (quoting *Rode*, 892 F.2d at 1183).   The IDEA specifically

provides that fees "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished."  20 U.S.C. § 1415(i)(3)(C).  Thus, if it does not exceed the prevailing market rate charged in the community, the agreed rate is the allowable rate.

On August 13, 2014, Rena signed a fee agreement setting Berney's hourly rate at $350.[47]  The agreement allowed an annual increase of five percent at the start of each calendar year.[48]  After the IDEA proceeding ended and after this action was filed, Rena signed a second fee agreement, which dramatically increased Berney's hourly billing rate to $495,[49] representing an increase of 41%.

Not only did Berney significantly increase his hourly rate, he did so retroactively.[50]  What is concerning is Berney had Rena sign the second fee agreement one week before he filed his motion for attorney's fees.[51]  Apparently, this is not the first time he has submitted a second fee agreement increasing his hourly rate retroactively in connection with a request for an award of attorney's fees.  *See M.M. & E.M., individually & ex. rel. S.M. v. Sch. Dist. of Phila.*, 142 F. Supp. 3d 396, 404–06 (E.D. Pa. 2015). The timing of the second agreement suggests it was intended to significantly boost the hourly rate for purposes of this action.

After producing both fee agreements, Berney offered a compromise consisting of different rates for work done during three time periods: (1) rates set in the first fee agreement ($350) for the period from June 2014 to December 31, 2014; (2) a 5% rate increase ($367.50) for the period January 1, 2015 to August 6, 2015; and (3) rates set in the second fee agreement ($495) for the period after August, 7, 2015.[52]  As a fourth alternative, Berney later proposed that the rate set in the second agreement be applied

only to work related to defending against Colonial's counterclaim.[53]

Berney justifies his hourly rate by citing the 2014 Community Legal Services ("CLS") fee schedule of $520–590 for attorneys with 21–25 years of experience.[54]   The CLS fee schedule suggests a range of hourly rates in relation to an attorney's years of post law school experience.[55]

The CLS fee schedule is often used as a guide to determine an appropriate hourly rate.   S*ee, e.g.*, *Pelzer v. City of Philadelphia,* 771 F. Supp. 2d 465, 470 (E.D. Pa. 2011).   The Third Circuit has used it.   *Maldonado,* 256 F.3d at 187–88.   But, it is not binding.   Courts have declined to use it when: (1) the schedule was out-of-date; (2) the attorneys were unaffiliated with CLS; (3) the parties submitted sufficient evidence of the prevailing market rates; and (4) the schedule failed to reflect specialized skills or experience.   *See, e.g.*, *E.C. v. Sch. Dist. of Phila.*, 91 F. Supp. 3d 598, 606 (E.D. Pa. 2015); *Mitchell v. City of Philadelphia*, No. 99-6306, 2010 WL 1370863, at *15 (E.D. Pa. Apr. 5, 2010).

The CLS fee schedule is not appropriate for fixing hourly rates in IDEA cases. The schedule is based only on years of practice.   It does not consider the attorney's experience in the relevant field, the level of participation in a case, and reputation in the field.   There is nothing in the schedule covering rates of attorneys practicing in the IDEA field.   Relying on it in an IDEA case would ignore Congress's direction to consider the attorney's "skill, reputation, and experience."   20 U.S.C. § 1415(i)(3)(F)(ii).

Berney also relies on the Adjusted Laffey Matrix, the *National Law Journal* 2010 Billing Survey, and the *New Jersey Law Journal* 2012 Billing Survey.[56]   The Laffey Matrix, developed by the U.S. Justice Department for fee-shifting cases, sets

reasonable fees based on the number of years after an attorney graduated from law school.[57]  Like the CLS fee schedule, it does not account for skill in the field, relevant experience, or reputation.  Furthermore, the matrix relates to the Washington, D.C. area, not Philadelphia.[58]  *See Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 708 (3d Cir. 2005) (The Laffey Matrix "provides billing rates for attorneys in the Washington, DC market with various degrees of experience.").  Therefore, it is not appropriate for determining the prevailing market rate in the Philadelphia legal community.

The surveys by the *National Law Journal* and the *New Jersey Law Journal* report the highest, lowest, average, and median billing rates for partners and associates at national and international law firms.[59]  They do not account for experience, other than distinguishing partners and associates.  They do not differentiate rates for practice areas or geographic office locations.  According to the *National Law Journal*, partners at two Philadelphia-based law firms, Fox Rothschild and Cozen O'Connor, reported hourly rate ranges of $315–$690 and $310–$880, respectively.[60]  The *New Jersey Law Journal* reported similar results for these firms.[61]  Although we give the two surveys little consideration due to their limitations, we note that Berney requests and Colonial suggests rates within these ranges.

Berney submitted seven attorney declarations attesting to the reasonableness of his rate.[62]  Two of the declarations rely on the CLS fee schedule and the surveys.[63]  Three justify higher rates based on contingency risks.[64]

To the extent the fees are influenced by the contingent nature of the case, they must be disregarded.  The IDEA does not permit an adjustment for contingency.  The

statute provides, "No bonus or multiplier may be used in calculating the fees awarded under this subsection." 20 U.S.C. § 1415(i)(3)(C); *see also City of Burlington v. Dague*, 505 U.S. 557, 565 (1992). As stated earlier, we do not accept the CLS schedule and the surveys as reliable measures of reasonable rates. Thus, we disregard these declarations to the extent they rely on them.

Berney compares his rate with those fixed by various district courts in Pennsylvania.[65] None of the cases involve special education matters. The comparisons are based on the number of years following law school graduation and do not reflect relevant experience or practice area. For the same reasons we discounted the CLS fee schedule and the Laffey Matrix, we give no weight to these court-approved rates.

Colonial argues that the requested rates do not comport with Berney's relevant experience when compared to the rates and experience of other attorneys in the field.[66] Colonial offers a list of the current hourly rates and the relevant experience of seven special education attorneys.[67] As examples, one attorney, who has fifteen years' experience in special education, bills at $395; another, who has practiced exclusively in special education since 1998, bills at $410; and a third, who has practiced in special education for approximately ten years and has prior litigation experience, bills at $360.[68]

Berney counters that Colonial has selectively chosen its examples and fails to specify what year the rates were submitted or to provide substantiating evidence.[69] To the contrary, Colonial asserts the rates are based on recent submissions to its counsel's law firm and are current as of September 4, 2015.[70] Berney does not challenge the accuracy of this statement.

21

In defending an hourly rate of $495, Berney boasts that he has filed "more fee petitions than any other education attorney over the last five years."[71]  The multiplicity of fee petitions does not translate into a testament to his expertise and success.  Indeed, in those instances where his fee petitions were scrutinized, his hourly rate and his requested fees were reduced.  In some cases, his expertise and litigation practices have been criticized.  Judge Tucker recently fixed Berney's hourly rate at $350.  *E.C.*, 91 F. Supp. 3d at 617.  In another case, Judge Sanchez reduced Berney's requested rate from $325 to $285, noting "his frequent consultations . . . and the number of hours he has spent on this case demonstrate Berney has little experience in special education matters."  *Laura P. v. Haverford Sch. Dist.*, No. 07-5395, 2009 WL 1651286, at *3 (E.D. Pa. June 12, 2009), *abrogated on other grounds by Steven I. v. Cent. Bucks Sch. Dist.*, 618 F.3d 411, 412 (3d Cir. 2010).  Judge Sanchez also found that "Berney made [the] case needlessly difficult, though it was not a complex matter."  *Id.*  He observed that Berney "conceded little, unreasonably requesting fees and costs for clearly unsuccessful portions of his case and for reimbursable items, in a manner characteristic of the contentious spirit with which he has handled this matter." *Id.* at *8 n.9.  Berney's conduct in this case was not any different.

In determining a reasonable hourly rate, we consider Berney's tenure and experience in the special education field, the declarations to the extent noted, the quality of the work product, the fee agreements, and judicially approved rates.  We also look at the time spent performing routine tasks as revealing his level of proficiency.  Taking into consideration all these factors, we conclude that the rate Berney agreed to charge Rena, $385.00 (an initial rate of $350.00 plus two annual increases of 5%)[72] is a

reasonable hourly rate.

*Disputes with Specific Time Entries*

In an IDEA case, the amount of attorney's fees must be reduced when the time and the services performed "were excessive considering the nature of the action or proceeding." 20 U.S.C. § 1415(i)(3)(F)(iii). Colonial contests only time entries for work performed after the ten-day offer had expired.[73] Hence, we do not address them.

Because Rena's attorney's fees are cut off at the expiration of the ten-day offer, we need not scrutinize Berney's time entries. Had we found that Rena obtained more favorable relief or was substantially justified in rejecting the offer, we would still have reduced Berney's fee for unnecessarily prolonging the litigation and persisting in making baseless arguments regarding the validity of Colonial's offer.

### Colonial's Request for Attorney's Fees

Colonial counterclaims for attorney's fees incurred after the ten-day offer expired. It cites Rena's "needless litigation and unsupported positions."[74]

A school district may be awarded attorney's fees where the parent filed a complaint that was "frivolous, unreasonable, or without foundation," or she continued to litigate the matter after it had become clear that the litigation was "frivolous, unreasonable, or without foundation." 20 U.S.C. § 1415(i)(3)(B)(i)(II). A school district may also be awarded attorney's fees if the parent's complaint or subsequent cause of action was presented for an improper purpose. *Id.* § 1415(i)(3)(B)(i)(III).

In either case, the school district must be a prevailing party. *Id.* § 1415(i)(3)(B)(i)(II)–(III). Under the IDEA, only a prevailing party may recover attorney's fees. *See id.* § 1415(i)(3)(B)(i). Colonial was not a prevailing party.

Colonial stipulated that Rena was a prevailing party for the purposes of this action.  It did not stipulate that Rena is entitled to attorney's fees incurred after the ten-day offer expired.  That does not make Colonial the prevailing party.

This is not a case where the school district stuck to its original offer throughout the process leading to the consent order.  Although the ultimate outcome did not exceed what Rena had been initially offered, the consent order did provide a more favorable result than what Colonial offered at one point later in the negotiations before it renewed its original offer.  When it learned that A.D. was repeating eighth grade, it withdrew its offer of pendency at DVFS.  It later renewed the initial offer.

In the meantime, Rena continued with the administrative process.  The consent order provided for placement at DVFS, which Colonial had offered and later withdrew.  Because these events occurred after the ten-day offer expired, they do not excuse Rena's rejection of the offer.  In other words, the post-offer process was instigated by Rena's rejections of the offer.  Nevertheless, under the circumstances, particularly that Colonial is not paying Rena's attorney's fees incurred after the offer expired, we shall decline to award attorney's fees to Colonial.

### Expert Fees and Costs

In addition to attorney's fees, Rena's counsel seeks $5,095 in expert fees for three expert witnesses.[75]   Counsel intended to call these witnesses during the administrative hearing.[76]

The parties agree the IDEA does not provide for an award of expert fees.  *Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 297 (2006).  The ADA does allow for the recovery of expert fees.  *See, e.g.*, *Lovell v. Chandler*, 303 F.3d 1039,

1058 (9th Cir. 2002), *cert. denied*, 537 U.S. 1105 (2003).  Some courts have permitted the award of expert fees under section 504.  *See Elizabeth S. v. Sch. Dist. of Phila.*, No. 11-1570, 2012 WL 2469547, at *5 (E.D. Pa. July 22, 2016) (Section 504 "incorporates the remedies available under the Civil Rights Act of 1964, which specifically provides for the recovery of expert fees.") (citations omitted); *I.H. ex rel. D.S. v. Cumberland Valley Sch. Dist.*, 842 F. Supp. 2d 762, 777 (M.D. Pa. 2012) ("We believe that Section 504 thus contemplates an award of expert fees to the prevailing party in its assumption of the rights and remedies of the Civil Rights Act.").  *But see M.P. ex rel. K.P. v. Indep. Sch. Dist. No. 721*, No. 01-771, 2007 WL 844688, at *4 (D. Minn. Mar. 16, 2007) (holding section 504 does not allow for the recovery of expert fees).

In proceedings brought primarily under the IDEA, courts have allowed expert fees under section 504 only when the hearing officer makes findings of fact and conclusions of law that explicitly mention section 504.  *See Elizabeth S.*, 2012 WL 2469547, at *5.  Although Rena sought declaratory relief under the IDEA, section 504 and the ADA, the consent decree does not mention section 504 or the ADA.[77]

In the earlier due process proceeding, the hearing officer's decision referred exclusively to the IDEA.[78]  Berney analogized this earlier due process proceeding with the current proceeding, noting many witnesses "were identical," exhibits from the first proceeding were relevant to the second, and the school district proposed "comparable" educational programs."[79]  The current proceeding, like the earlier one, was brought primarily under the IDEA.

Expert fees in cases brought primarily under the IDEA have been disallowed.  *Laura P.*, 2009 WL 1651286, at *10, n.12.  The *Laura P.* court noted,

> Plaintiffs cite no authority, and I can find none, to support their position that when claims are brought primarily under the IDEA, expert fees that are not recoverable under the IDEA can be reimbursed under the ADA or by way of any other statute under which claims are also brought.  It is inconceivable that the Supreme Court in *Arlington* would hold that expert or consultant fees incurred by prevailing parents in connection with an IDEA case are not recoverable, but allow these fees under the ADA in the same case.

*Id.*

We decline to allow a parent to circumvent the IDEA's restriction on expert fees by merely pleading violations under section 504 and the ADA.  In any event, these costs were incurred after the ten-day offer had expired.  Thus, Rena is not entitled to reimbursement for them.

Rena also seeks $511.02 in other costs, namely, her $400.00 filing fee for this action and $111.02 in copying costs.[80]  Because she incurred these costs after the ten-day offer had expired, they are not compensable.[81]

## Conclusion

In sum, after revising the hourly rate of David Berney to $385.00, and precluding fees after September 28, 2014, the lodestar is $7,438.00.[82]  Rena did not incur any recoverable costs on or before September 28, 2014.  Therefore, we conclude that she is entitled to a total award of attorney's fees in the amount of $7,438.00.

/s/TIMOTHY J. SAVAGE
TIMOTHY J. SAVAGE,  J.

---

[1] Compl., Ex. B (Doc. No. 1) at 23–24.

[2] *Id.*, Ex. B at 25–26.

[3] Answer, Ex. 7 (Doc. No. 2).

[4] *Id.*, Ex. 8.

---

[5] Mediation is not a prerequisite to filing an administrative complaint.  20 U.S.C. § 1415(e)(2)(A) (mediation must be "voluntary on the part of the parties" and may not be used to "deny or delay a parent's right to a due process hearing").  At oral argument, Berney explained his advice to cancel mediation:

> Based on her concerns about meeting without an attorney present, yes, I advised her not to.  I said there is going to be a resolution session.  There are opportunities to negotiate with your attorney present.  If your concern is not hav[ing] an attorney present, we can do this without the mediation.  So it was my advice to proceed through the IDEA process, the other procedural mechanisms of the IDEA process, as opposed to mediation.

Oral Arg. Tr. at 63:13–21.

[6] Rena's Mot. for Summ. J. on Colonial's Countercl., Ex. A (Doc. No. 12) ¶¶ 28–29.

[7] Stip. R., Ex. 10 (Doc. 10-1) at 00031.

[8] *Id.*, Ex. 11 at 00032.

[9] *Id.*

[10] *See* Rena's Mot. for Summ. J., Ex. S (Doc. No. 16-2) at ECF 13; Colonial's Resp. to Statement of Undisputed Facts (Doc. No. 20) ¶ 49.

[11] Rena's Mot. for Summ. J., Ex. S at ECF 4.

[12] Rena's Statement of Undisputed Facts (Doc. No. 15) ¶ 50; Rena's Mot. for Summ. J., Ex. S at ECF 6–7.

[13] Rena's Mot. for. Summ. J., Ex. S at ECF 12–13

[14] Rena's Statement of Undisputed Facts ¶ 54; Rena's Mot. for Summ. J., Ex. S at ECF 16.

[15] Stip. R., Ex. 12 at 00035–82.

[16] Rena's Statement of Undisputed Facts ¶ 58.

[17] *Id.* ¶ 60.

[18] Stip. R., Ex. 15 at 00090.  Rena's claim for tuition reimbursement for school year 2013–14 at Stratford Friends School had become moot after Colonial paid for this tuition.  Rena's Am. Mot. for Summ. J., Ex. A (Doc. No. 17) at 1 n.1.

[19] Stip. R., Ex. 15 at 00090.  Pendency at DVFS would allow A.D. to remain at DVFS at Colonial's expense throughout the pendency of future IDEA proceedings, including all appeals.  *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112, 124–25 (3d Cir. 2014), *cert. denied*, 135 S. Ct. 2309 (2015).

[20] Stip. R., Ex. 16 at 00091–93.

[21] *Id.*, Ex. 17 at 00094.

[22] Colonial's Mot. for Summ. J. (Doc. No. 13-1) at 13–14; Colonial's Resp. (Doc. No. 19) at 14.

[23] Rena's Mot. for Summ. J. on Colonial's Countercl., Ex. A ¶ 28.

[24] Stip. R., Ex. 20 at 00099.

[25] Colonial's Mot. for Summ. J. at 5; *see also* Colonial's Resp. at 14.

[26] Stip. R., Ex.11 at 00032.

[27] *Id.*, Ex. 14 at 00088.

[28] *Id.* at 00089.

[29] Rena's Am. Mot. for. Summ. J., Ex. A at 34.

[30] Stip. R., Ex. 21 at 00100 (emphasis added).

[31] *Id.* ¶ 8 (emphasis added).

[32] *Id.* ¶ 11.

[33] *Id.* ¶ 12.

[34] *Id.* ¶¶ 15, 17.

[35] *Id.* ¶ 16.

[36] *Id.* ¶ 5.

[37] *Id.* ¶ 15.

[38] *Id.*

[39] Rena's Mot. for. Summ. J., Ex. S (Doc 16-2) at ECF 13.

[40] *Id.* at ECF 12.

[41] Rena's Statement of Undisputed Facts ¶ 40.

[42] Colonial's Resp. to Statement of Undisputed Facts ¶ 40.

[43] Colonial's Resp. (Doc. No. 19) at 14; *see* Colonial's Mot. for Summ. J. at 9.

[44] Stip. R., Ex. 10 at 00031.

[45] Rena's Mot. for. Summ. J., Ex. S at ECF 2.

[46] On July 28, 2015, Berney apparently reduced his bill in an effort to avoid this fee litigation, explaining he had so many pending fee petitions that he was offering "the legal equivalent of a 'blue light' special."  Rena's Mot. for Summ. J., Ex. S at ECF 21.

[47] First Fee Agreement ¶ 2, Aug. 13, 2014.

[48] *Id.*

[49] Second Fee Agreement ¶ 2. The later agreement also increased an associate's hourly rate of $325 for a 22% increase.  Because the associate did not perform any work before the ten-day offer expired, we consider only Berney's hourly rate.

[50] *Id.*

[51] The agreement itself is undated, but Berney emailed it to Rena for signature on Friday, August 7, 2015.  Rena then filed for summary judgment one week later on Friday, August 14, 2015.

[52] Letter from David Berney to Judge Savage, Nov. 23, 2015, at 2.

[53] *Id.* at 2 n.2.

[54] Rena's Am. Mot. for Summ. J., Ex. A at 11.

[55] *Id.*

[56] *Id.* at 12–15.

[57] Rena's Mot. for. Summ. J., Ex. P (Doc. No. 16-1) at ECF 29.

[58] *Id.* at ECF 29–30.

[59] *Id.*, Exs. N, O.

[60] *Id.*, Ex. N at ECF 21.

[61] The range for partners was $340–$780 at Fox Rothschild and $320–$970 at Cozen O'Connor. *Id.*, Ex. O at ECF 26–27.

[62] Rena's Am. Mot. for Summ. J., Ex. A at 7.

[63] Rena's Mot. for Summ. J., Ex. B ("Decl. Jennifer Clarke") (Doc. No. 16) at 3; *id.*, Ex. G ("Decl. Jonathan Corchnoy") ¶ 11.

[64] *Id.*, Ex. D ("Decl. Alan Yatvin") ¶¶ 33–34 ("In my experience the Philadelphia market compensates attorneys in contingent cases at a higher rate than retained hourly rate cases due to the speculative nature of such cases."); *id.*, Ex. F ("Decl. Dennis McAndrews") ¶ 5 ("As a result, many cases are taken on some form of contingency basis.  A broad range of factors is involved in each attorney's decision regarding rates to charge in these matters, not all of which are driven by market forces."); *id.*, Ex. G ("Decl. Jonathan Corchnoy") ¶ 18 ("When I factor in their risk of non-payment in taking cases on a contingency basis, it is my opinion that their respective hourly rates are more than fair and reasonable.").

[65] Rena's Am. Mot. for Summ. J., Ex. A, at 15–17.

[66] Colonial's Resp. at 3–5; *id.*, Ex. A ("Unsworn Statement") (Doc. No. 19-1); Correction to Unsworn Statement (Doc. No. 28).

[67] Colonial's Resp., Ex. A (Doc. No. 19-1) ¶ 5.

[68] *Id.*

[69] Rena's Reply (Doc. No. 24) at 3, 5.

[70] Colonial's Resp., Ex. A at 2–3.

[71] Rena's Reply at 3.

[72] The hourly rate is fixed at the time the fee petition is filed, not when the services were performed.  *Lanni v. New Jersey*, 259 F.3d 146, 149 (3d Cir. 2001).  The purpose of this rule is to simplify the calculation of fee awards and compensate prevailing parties for any delay in reimbursement.  *See id.* at 150; *Ryan P. ex rel. Christine P. v. Sch. Dist. of Phila.*, No. 07-2903, 2008 WL 724604, at *5–6 (E.D.

Pa. Mar. 18, 2008).

[73] Colonial's Resp., at 6–9.

[74] *Id.* at 16.

[75] Rena's Am. Mot. for Summ. J., Ex. A at 26.

[76] Rena's Mot. for Summ. J., Ex. A (Doc. No. 16) ¶¶ 38–43.

[77] Stip. R., Ex. 15 at 00090.

[78] Compl., Ex. B.

[79] Rena's Mot. for Summ. J., Ex. A ¶ 45.

[80] *See id.*, Ex. Y (Doc. No. 16-2) at ECF 66–67.

[81] Rena's invoice for copying costs was dated January 30, 2015, which was more than four months after the ten-day letter had expired.  *Id.* at ECF 67.

[82] Berney, two associates, and a paralegal submitted the following respective hours: 200.3 hours, 42.9 hours, 16.3 hours, and 4.6 hours.  On or before September 28, 2014, Berney recorded 18.8 hours and the paralegal recorded 2 hours.  Rena's Mot. for Summ. J., Ex. A (Doc. No. 16) at ECF 40; Ex. K (Doc. No. 16-1) at ECF 12; Ex. L (Doc. No. 16-1) at ECF 17; Ex. T (Doc. No. 16-2) at ECF 27.  The associates did not record any time for work performed on or before September 28, 2014.  Using reasonable hourly rates for Berney and the paralegal of $385.00 and $100.00, respectively, the lodestar is $7,438.00.